No. 38,122

James Simeon, *Appellee,* v. Matt Schroeder, *Appellant.*

(227 P. 2d 153)

Opinion filed January 27, 1951.

*Ralph H. Noah,* of Beloit, argued the cause, and *Thomas H. Conroy,* of Beloit, was with him on the briefs for the appellant.

*L. F. Cushenbery,* of Oberlin, argued the cause, and *John M. Bremer,* of Oberlin, and *Orin C. Jordan,* of Beloit, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an action to recover wages. The plaintiff recovered and the defendant appeals.

In his petition the plaintiff states:

"2. That on or about March 7th, 1946, the defendant engaged the plaintiff to work for the defendant at Tipton, Kansas, and that the plaintiff was employed by the defendant from March 7th, 1946, until August 29th, 1947; that there was no written agreement covering said employment. Plaintiff further states and alleges that at the time he agreed to work for the defendant the defendant agreed to pay him the usual wages for work in that community. Plaintiff further states and alleges that he did work for the defendant for a period of seventeen and one-half (17½) months as set out above and that he performed valuable services for the defendant at all times during that period of time; that the minimum wage for such services in the community in which plaintiff was employed by the defendant and during the time plaintiff was working for defendant was the sum of $200.00 per month and that the fair and reasonable value of the services rendered by the plaintiff to the defendant was the sum of $200.00 per month or a total of $3500.00 for the seventeen and one-half (17½) months the defendant received the services of the plaintiff.

"3. Plaintiff further states that the defendant during said period paid the plaintiff in money for services the sum of $845.00 and that the defendant paid the plaintiff during said period in clothing, tires and other sundry supplies of the value of $298.50, making a total amount paid the plaintiff by the defendant

of the sum of $1143.50. Plaintiff further states and alleges that there is a balance due from the defendant of the sum of $2356.50; that the plaintiff has made repeated demands upon the defendant and the defendant fails and refuses on demand to pay the amount due plaintiff for the fair value of the work and labor and services plaintiff performed for the defendant."

The defendant's answer to the petition consists of a general denial, an admission of residence in the county wherein the action was instituted, and the following averments:

"And for further Answer, the defendant alleges that the plaintiff was a boy with little or no experience, and unfortunate physically, and that he was not strong and had very poor eyes. The plaintiff did not do good work, but was paid promptly according to the mutual agreement of plaintiff and defendant for the services that plaintiff performed, and was fully paid from time to time during said employment. That plaintiff only worked part time, and took time off from his work, sometimes with and sometimes without, the consent of this defendant, often times when the defendant was absent and the limited services of the plaintiff would have been most beneficial. That all amounts due the plaintiff by reason of any employment plaintiff had with defendant have been fully paid, and paid in an amount far in excess of the value of the services rendered."

All allegations of the answer inconsistent with the petition are denied by the plaintiff in his reply.

On issues raised by the foregoing pleadings the cause was tried by a jury which returned a general verdict in favor of the plaintiff and against the defendant for the sum of $1,131.50 along with its answers to special questions which read:

"QUESTION NUMBER 1. For how long a time do you find the plaintiff worked for the defendant? ANSWER: 17½ months (approximately).

"QUESTION NUMBER 2. How many hours a day do you find the plaintiff usually worked while working for the defendant? ANSWER: 10 hours.

"QUESTION NUMBER 3. How many days a week do you find the plaintiff worked for the defendant? ANSWER: Seven.

"QUESTION NUMBER 4. What do you find to be the reasonable monthly value of the services performed by plaintiff for defendant? ANSWER: $130.00 per month.

"QUESTION NUMBER 5. Has the plaintiff been fully compensated for his services? ANSWER: No.

"QUESTION NUMBER 6. Was there an agreement as to compensation between the plaintiff and the defendant? ANSWER: Yes.

"QUESTION NUMBER 7. If you answer the above question in the affirmative, what was the agreement? ANSWER: The plaintiff was to receive the usual wage in that community."

At the outset appellant assigns error in the overruling of his demurrer to appellee's evidence. In support of his position he first

directs our attention to the fact the petition charges the defendant agreed to pay plaintiff the usual wages for work in the community and asserts there is no evidence to establish that fact. We do not agree. The record discloses appellee testified that he asked the appellant about the amount of pay he would receive if he went to work for him and that appellant answered he would pay him whatever was right and not to worry about it. That statement, in our opinion, meant that appellant would pay the usual or prevailing wage and suffices to establish the allegation of the petition to which we have heretofore referred. Appellant's further contention on this point to the effect that other material allegations of the petition are unsupported by evidence has little merit and need not be labored.

Appellant complains of the trial court's action in overruling its request for an instruction directing the jury to return a verdict in his favor. He also insists the general verdict was contrary to the evidence and that therefore his motion for a new trial should have been sustained. Both of these claims require an examination of the record. No useful purpose would be served by detailing the evidence. It suffices to say that after having carefully reviewed all the testimony we are convinced this was essentially a fact case where the jury would have been warranted in returning a verdict for or against either of the parties depending on whom it believed. It saw fit to believe the appellee and disbelieve the appellant. In such a situation it cannot be said the trial court erred in failing to give the requested instruction or in refusing to grant a new trial on the ground heretofore mentioned.

Another contention advanced by appellant is that the court erred in giving Instruction No. 9. By this instruction the jury was told the evidence disclosed the appellee had worked for appellant seventeen and one-half months, that appellant had accepted his services for that period and that under such circumstances appellee was entitled, under the pleadings and the evidence, to recover the reasonable value of his services even if it found there was no express agreement between the parties regarding the amount to be paid for such services. The instruction also advised the jury how, in that event, it was to ascertain the reasonable value of appellee's services and whether he had been paid therefore. Assuming as appellant contends, without deciding the question, there was something wrong with this instruction the fact it was given affords no sound ground for reversal of the instant judgment.

By its answer to Question 6 the jury found there was an agreement between the parties as to compensation and based its verdict on that premise without regard to the factual situation covered by such instruction. Under our statute (G. S. 1935 60-3317) error complained of which does not prejudice the substantial rights of a party affords no sound basis for the reversal of a judgment and must be disregarded. This rule is, of course, applicable where errors or defects in instructions become nonprejudicial by reason of special findings (see *Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 91, 98 P. 2d 162).

There is little if any merit in appellant's assignment of error the trial court erred in rendering judgment for the appellee upon the answers to special questions. In the first place the record discloses the judgment was rendered upon the general verdict, not upon the special findings. If, by this assignment of error, appellant intends to complain because the court failed to render judgment upon the answers to such questions his complaint still lacks merit. Upon examination of the answers to special questions we fail to find any legal inconsistency between the special findings and the general verdict. Of a certainty it cannot be said they are so inconsistent when considered as a whole that they overthrow the general verdict. The rule, under all our decisions, is that the general verdict and the special findings must be harmonized if possible and unless the special findings clearly overthrow the general verdict the latter must be permitted to stand. (See *Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924; *Jelf v. Cottonwood Falls Gas Co.*, 162 Kan. 713, 178 P. 2d 992, and cases therein cited.)

During the course of the trial while appellant was testifying as a witness in his own behalf he was asked on cross-examination how many times he had been sued for accounts. Objection was made to the question but before it could be ruled upon appellant moved for a mistrial. There ensued, in the presence of the jury, a colloquy between court and counsel with respect to the objection and the motion in which appellant's counsel volunteered the information his client had been sued on a number of accounts, that he had been found to be right on some of them and that counsel thought he was right on all of them. Ultimately the court overruled the motion for a mistrial and sustained the objection to the question. Later, and after the jury had retired to the jury room to consider its verdict, appellant's counsel claimed to have acquired information to the

effect there had been some discussion in the jury room about the matters discussed in the presence of the jury. Still later on a motion for new trial he insisted that he be permitted to call in some of the jurors and interrogate them about such matters. The court refused to permit this to be done. It is now claimed that the trial court erred in such action and in its action in refusing to declare a mistrial.

Appellant cites no decisions holding the mere asking of a question of the kind to which we have referred is ground for a mistrial when an objection thereto is sustained. It has been said that under such circumstances (See *McCoy v. Fleming*, 153 Kan. 780, 783, 113 P. 2d 1074) this court might well conclude his counsel, after diligent search, have been unable to find any, in which case the judgment should be affirmed. In any event our view is the trial court did not err in overruling the motion for a mistrial.

We are not disposed to labor appellant's contention the trial court erred in refusing to permit interrogation of some of the jurors, in connection with the presentation of his motion for a new trial, on matters pertaining to comments alleged to have been made in the jury room regarding appellant having been sued on various accounts or concerning his reputation for paying his bills. Nor are we inclined to write a treatise on the subject of when conduct of that character results in misconduct on the part of a jury. It suffices to say, that under the facts and circumstances of this case, where appellant opened the door and made it possible for the jury to comment on the matters complained of, we do not believe it can be said, and we are not inclined to hold, action of the trial court in refusing to permit him to interrogate members of the jury on such subject for the avowed purpose of obtaining a new trial constitutes such clear and palpable error as to require a reversal of the judgment. This court has long adhered to the rule (See *Meyer Sanitary Milk Co. v. Casualty Reciprocal Exchange*, 145 Kan. 501, 66 P. 2d 619) that reversal of a judgment cannot be secured on invited error.

The judgment is affirmed.