**140**

(827 P.2d 68)

No. 65,925 ■

DANNY F. COFFMAN, *Appellee*, v. LIEN ENTERPRISES, INC., and KANSAS WORKERS COMPENSATION FUND, *Appellees/Cross-Appellants*, and FARMERS ALLIANCE MUTUAL INSURANCE, *Appellant/Cross-Appellee*.

Opinion filed June 28, 1991.

*Brian G. Boos*, of Gehrt & Roberts, Chartered, of Topeka, for the appellant.

*Kurt A. Harper*, of Sherwood, Harper & Gregory, of Wichita, for appellee Lien Enterprises, Inc.

*Vincent L. Bogart* and *Alan D. Herman*, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellee Kansas Workers Compensation Fund.

*James B. Zongker*, of Render, Kamas & Hammond, of Wichita, for appellee Danny F. Coffman.

Before LARSON, P.J., LEWIS and PIERRON, JJ.

LEWIS, J.: This is an appeal by Farmers Alliance Mutual Insurance Company (FAMI) from an adverse ruling in a workers compensation case. The Workers Compensation Fund (Fund) cross-appeals certain issues relevant only to its potential liability.

At the outset, we note that this appeal does not involve the usual issues presented in a workers compensation case. There are no issues concerning the propriety of the award to claimant insofar as disability, causation, etc. are concerned. The issues presented on appeal revolve around whether the workers compensation policy issued by FAMI to Lien Enterprises, Inc. (Lien) was void *ab initio* for fraud. There is also a question as to whether the court had jurisdiction to deal with the issues in the manner utilized.

The facts show that Lien was the employer of claimant and was the insured under a policy issued by FAMI.

The genesis of this dispute occurred when Lien made a decision to cancel its insurance coverage with one insurance agency and write that coverage through the Henry Insurance Agency (Henry). This decision involved the transfer of all of Lien's insurance business, including its workers compensation coverage policy, from the Wayne Wright Insurance Agency (Wright) to Henry.

Originally, Henry advised Lien to cancel all of its insurance with the exception of its workers compensation coverage. Accordingly, Lien advised Wright that it desired to cancel all of its insurance coverage issued through that agency with the exception of the workers compensation coverage. Upon being advised of Lien's intentions and desires, Wright responded by advising that it would not continue the workers compensation coverage alone. Lien then advised Henry that, if Lien was going to move its business, Henry would have to find it appropriate workers compensation coverage. Henry responded: "That's okay. It's no problem."

Upon being given this assurance by Henry, Lien mailed a letter to Wright cancelling all of its insurance coverage, including its workers compensation coverage. As of June 9, 1987, Lien believed that Henry had bound coverage on all of its insurance needs, including its workers compensation coverage.

On June 12, 1987, there was no workers compensation policy which had been issued by FAMI or any other company to insure the workers compensation needs of Lien. Unfortunately for all, on that date, claimant Danny F. Coffman, one of Lien's employees, sustained major injuries while performing his duties in Lien's employ.

After being made aware of the accident involving claimant, the principal officers of Lien knew that, on the date of the accident, they had no written binder or other written verification of a workers compensation policy. The officers of Lien consulted with their attorney, who advised them to remain silent about the accident and to wait a reasonable time to obtain written verification of a workers compensation policy before reporting the accident. It is apparent that Lien took this advice to heart as there is no evidence that any of its officers or employees reported or revealed the occurrence of the accident in which claimant was injured until after a workers compensation policy had been issued by FAMI and was in hand.

Meanwhile, before and after claimant's accident, Henry was busy attempting to obtain workers compensation coverage for Lien. Although Henry was not an authorized agent for FAMI, it had placed coverage in the past with FAMI through C. A. Langhofer & Associates, Inc., (Langhofer) which was an authorized agent for FAMI. On or about the date of claimant's accident, Henry was working with Langhofer in an effort to place Lien's workers compensation coverage with FAMI.

Henry, at Lien's request, was seeking to secure a binder or policy of workers compensation coverage which would be backdated to June 8, 1987. It eventually obtained such a policy from FAMI through Langhofer.

The issuance of the policy by FAMI was accomplished through the efforts of Kim Venable, an employee of FAMI, and Carol Elliott, an employee of Langhofer. On June 25, 1987, Elliott telephoned Venable and asked if FAMI would issue workers compensation coverage to Lien, backdated to June 8, 1987. In response to this request, Venable asked Elliott if there had been any accidents involving Lien employees since June 8, 1987. Elliott advised Venable either that there had not been any accidents or that there were none to her knowledge. Elliott, in fact, had no

information on which to base her statement of no accidents. She did not know of any accidents and did not inquire of Lien or Henry to determine if they knew of any accidents. Not only is there no evidence that Elliott made any inquiries of Lien or Henry, there is no evidence that she was misled by anyone in advising FAMI that no Lien employees had been in a workers compensation covered accident during the time in question. Elliott had provided FAMI with incorrect information which she had negligently failed to verify.

Based upon the assurances by Elliott, Venable authorized the issuance of a binder of workers compensation coverage to Lien, backdated to June 8, 1987. This binder was issued and was not cancellable for a minimum period of 60 days. A few days after issuing the binder, Venable received an unsigned insurance application from Langhofer and issued the workers compensation policy. The application form forwarded by Langhofer purported to be from Lien, but was unsigned and did not ask any questions about accidents which might have occurred before or after June 8, 1987. The fact of claimant's accident was not disclosed on the application.

On July 27, 1987, FAMI received notice of claimant's accident and his intention to make a claim against the policy in question based on the June 12 accident. After an extensive investigation, FAMI denied coverage under the workers compensation policy.

FAMI took the position that the policy was procured by fraud and was void *ab initio*. This issue was decided adversely to FAMI, and it appeals that decision.

In addition to the appeal by FAMI, the Fund has cross-appealed on certain issues which were decided adversely to it.

We affirm the decision of the trial court, holding FAMI's policy to be valid and binding. This decision renders the cross-appeal issues moot.

## THE JURISDICTION ISSUE

Before dealing with the merits of the appeal by FAMI, we first turn to a question of jurisdiction which is raised by FAMI.

As pointed out earlier, the only question litigated was that of coverage. In resolving the question of coverage, the court considered the relationship between FAMI and its agents. In par-

ticular, the court considered the relationship between FAMI and Langhofer as well as the errors made by Langhofer in procuring the policy and the relationship of those errors to the issuance of the policy. FAMI argues that, in a workers compensation proceeding, the court has jurisdiction only to consider the rights and liabilities of the parties to the action. In this particular instance, the formal parties to the action, in addition to claimant, were Lien, FAMI, and the Fund. FAMI argues that, when the court considered and then adjudicated the errors of Langhofer and their impact on the coverage question, the court exceeded its jurisdiction. We do not agree.

FAMI cites *King v. El Dorado Motor Co.*, 181 Kan. 477, 311 P.2d 999 (1957), as support for its position. We consider the reliance on *King* to be misplaced. In *King,* an adjudication was made holding an insurance agency directly liable for a claimant's injury. The Supreme Court reversed, holding that there was no jurisdiction over the insurance agency in a workers compensation proceeding. The facts of the instant matter are not similar to *King.* In the matter presently under consideration, the trial court made no effort to adjudicate or determine any liability on behalf of Langhofer. It merely considered the actions of Langhofer and Henry along with the other facts in its resolution of the question of coverage. There was no effort to assert jurisdiction over Langhofer or Henry or to hold either of those agencies responsible to claimant for his injuries. This case is clearly factually distinguishable from *King.*

In *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P.2d 456 (1940), the Supreme Court held that the procedures for deciding workers compensation issues under the Act are complete, distinct, and exclusive. Indeed, in order to resolve the issues relative to a claimant, the court in a workers compensation proceeding is compelled to "hear all evidence bearing *on all points and on all branches* of the case." 151 Kan. at 299. In the matter under consideration, one of the most important features of the claim was whether FAMI was obligated to pay the claim under the policy it had issued to Lien. In resolving that issue, the court was obligated to hear all of the evidence bearing on that question, including evidence of the actions of Henry, Elliott, Venable, and Langhofer, and to determine how

that evidence related to the question of coverage. We have no hesitation in holding that the court had jurisdiction to consider the relationship between FAMI, Langhofer, and Henry in resolving the coverage question in the instant matter.

## THE COVERAGE ISSUE

The critical issue on this appeal is whether FAMI is bound by the policy it issued to Lien. FAMI argues that it is not—that the policy was procured by fraud and is subject to rescission since it was void *ab initio.*

The trial court made extensive findings of fact on all issues involved. FAMI does not directly challenge any of those findings of fact, and we consider them to be final and binding upon all parties.

FAMI raises a question of how the law should be applied to the facts as determined by the court. On appeal, our review of questions of law is unlimited, and we are not bound nor constrained in any way by the decision of the trial court in resolving legal issues. See *Reeves v. Equipment Service Industries, Inc.,* 245 Kan. 165, 173, 777 P.2d 765 (1989).

The facts show that, at the time of claimant's accident, Lien had no workers compensation policy with FAMI. Indeed, it had no policy with anyone and had only the oral assurance by Henry that such coverage would ultimately be obtained. The record further shows that Lien, on advice of counsel, deliberately failed to disclose the fact of the accident to Henry, Langhofer, or FAMI. It clearly appears that, at the time FAMI issued its binder and subsequent workers compensation policy, it had not been advised by Lien, Henry, or Langhofer of the fact of claimant's accident. A reasonable interpretation of the facts leads us to the obvious conclusion that, had FAMI known of claimant's accident, it would not have issued the policy on which its liability is now based.

There is no question but that an insurance company has the right, under most circumstances, to rescind a policy *ab initio* for fraud and misrepresentation. *American States Ins. Co. v. Ehrlich,* 237 Kan. 449, 701 P.2d 676 (1985); *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730 (1931); *Dunn v. Safeco Ins. Co.,* 14 Kan. App. 2d 732, 735, 798 P.2d 955 (1990). Indeed, we have recently held that an automobile insurance company

"has the right, upon proper proof, to rescind a policy or binder *ab initio* for fraud or misrepresentation where the controversy involves *only* the insurer and its insured over nonliability, noncompulsory features of the insurance policy." *Dunn v. Safeco Ins. Co.,* 14 Kan. App. 2d 732, Syl. ¶ 2. See *Continental Western Ins. Co. v. Clay,* 248 Kan. 889, Syl. ¶ 2, 811 P.2d 1202 (1991).

It would appear that, upon proper proof, a workers compensation policy could be rescinded *ab initio* for fraud and misrepresentation. There appears to be no public policy or legislative enactment to prohibit such an action. The rescission of a workers compensation policy *ab initio* would not leave the claimant without a remedy since under those circumstances a claimant would be paid his compensation either by the employer or, if the employer was unable to pay it, from the Fund. For our purposes, we will assume that, upon proper proof, FAMI could rescind the policy in this action for fraud or misrepresentation.

The theory on which FAMI proceeds is sound and well recognized. The problem arises when we examine the record for proof of the necessary elements to support that theory. Upon our examination of the record, we find that the facts, as found by the trial court, simply do not support rescission for fraud.

It is simple hornbook law that, if one is to successfully seek relief on the grounds of fraud or misrepresentation, one must necessarily prove a fraudulent act *and* prove that such act was relied upon to one's detriment. *Slaymaker v. Westgate State Bank,* 241 Kan. 525, Syl. ¶ 2, 739 P.2d 444 (1987); *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 270, 679 P.2d 736 (1984); *State ex rel. Secretary of S.R.S. v. Fomby,* 11 Kan. App. 2d 138, Syl. ¶ 1, 715 P.2d 1045 (1986). Although the subject could be debated, arguably Lien was guilty of some fraud or misrepresentation in failing to disclose the fact of claimant's accident. It seems beyond dispute that Lien knew that disclosure of the accident would effectively destroy any hope it had of obtaining insurance coverage.

FAMI's problem is that it failed to prove that it issued the policy in reliance on any statements made by Lien or that it was induced to issue its policy in reliance on Lien's silence or failure to disclose the fact of the accident. There is, in our opinion, strong evidence of fraud or misrepresentation, but the total failure

to show action in reliance on such fraud or misrepresentation is fatal to FAMI's argument.

The record shows that FAMI issued the antedated binder before Lien's application for insurance was received by the company. Venable, who was FAMI's employee, authorized Elliott, who was Langhofer's employee, to issue the binder and to backdate it to June 8, 1987. Venable knew the binder was unequivocal and could not be cancelled for 60 days. Venable further knew that she had the authority to reject the request for the binder. Indeed, if FAMI relied on any representations in issuing the binder and subsequent policy, it relied on those of Elliott. Elliott, on behalf of Langhofer, FAMI's agent, advised FAMI that there had been no accidents. Elliott had no basis for making this statement and was not induced to do so by any misrepresentations of Lien or Henry. There is simply no evidence to indicate that FAMI was induced or encouraged to do anything by any fraud or misrepresentation perpetrated by Lien. FAMI issued its binder based on its own agent's incorrect and negligent assurances that there had been no accidents. It did not do so because of any fraud by Lien, and it did not do so because of any failure by Lien to disclose the accident. FAMI is, therefore, unable to rescind its policy as being void *ab initio* because of fraud or misrepresentation.

FAMI argues that Lien had a duty to advise it of claimant's accident. It argues, believably, that, had Lien done so, it would never have issued the binder or policy. FAMI cites *Matlock v. Hollis*, 153 Kan. 227, 109 P.2d 119 (1941), as support for its argument. We do not agree.

In *Matlock*, the facts indicated that the employer did not even contact his agent about his insurance until after the accident had taken place. Further, the employer in *Matlock* made an application for insurance, stating, falsely, that he had carried workers compensation insurance for five years, that he had had only two minor accidents, and that he had never had any insurance cancelled. All of these statements were false, and all of these statements were relied upon by the insurance company in issuing the policy. The Supreme Court held that, under the circumstances, the policy was procured by fraud and misrepresentation and was void.

The present controversy is clearly distinguishable from *Matlock*. In *Matlock*, there were direct and untrue misrepresentations made in the application which were relied upon by the company in issuing the policy. In the present controversy, there was no direct contact between Lien and FAMI, and the binder was issued *prior to receipt of the application from Lien*. The policy itself was issued in reliance on an application forwarded to FAMI by Langhofer, which purported to be from Lien but which was unsigned and which did not even ask questions concerning prior accidents. In addition, Lien had requested the insurance coverage, had paid a premium, and had been assured of coverage by Henry before the accident took place. Indeed, the trial court found that Lien believed Henry had bound workers compensation coverage for it prior to the accident. We do not consider *Matlock* to have relevance to the factual pattern presented.

FAMI insists it would not have issued the policy if Lien had disclosed the fact of the accident. We do not doubt the correctness of that statement. That fact does not, however, make the policy void. The record shows this policy was issued in reliance on assurances made by Elliott and the Langhofer agency. Lien's silence did not induce FAMI to write the coverage; the assurances of Elliott did. There must be a showing that the failure to reveal the accident was somehow relied upon by FAMI or somehow induced it to issue the policy. That showing is absent. The fact is, Lien had no direct communication with FAMI or Langhofer. Lien's communications were directly with Henry, and, if Henry failed to forward all information to Langhofer, this can hardly be blamed on Lien.

We hold that, under the facts, FAMI has shown no detrimental reliance upon any fraud, misrepresentations, or failure to disclose facts chargeable to Lien. As a result, there is no right to rescind the policy *ab initio* for fraud. The policy issued by FAMI was valid and is binding on FAMI.

We note that the principal misrepresentations relied upon by FAMI in issuing the policy were the statements by Elliott that no accidents had taken place. It is, therefore, obvious that the principal cause for any loss FAMI may suffer is Langhofer. In this connection, we note that FAMI has obtained a judgment against Langhofer for its loss, and that judgment has been affirmed

by this court in Case No. 64,273, an unpublished opinion filed April 20, 1990.

There were a number of other issues raised. For instance, the trial court held that FAMI was estopped, for various reasons, to deny coverage. In view of our decision on the rescission issue, we need not reach the other questions raised by FAMI.

We affirm the decision of the trial court on the question of FAMI's responsibility for coverage under its policy. This decision renders the cross-appeal issues raised by the Fund moot, and we do not reach those issues.

Affirmed.