PATTERSON, Justice.
This is an appeal from the Circuit Court of the Second Judicial District of Bolivar County. Dominic P. Rizzo, appellant here, brought suit for breach of implied warranty under a contract against Jordan Wholesale Company. Rizzo sought to recover damages suffered to his cotton crop which he claimed were caused by defective cotton seed purchased from the appellee. From a jury verdict and judgment thereon for the wholesale company, Rizzo appeals.
Rizzo, a cotton planter, contacted H. M. Jordan, President of Jordan Wholesale Company, concerning procurement of cotton seed in the spring of 1965. He desired the best certified seed available of the Stoneville 213 variety. Jordan assured Rizzo that he either had or would have certified seed of the desired variety. Thereafter, the sale was consummated by the purchase of 15,000 pounds of the desired seed from Jordan Wholesale Company at a cost of $981.25. The seed were delivered in 100-pound sacks to each of which there was attached a blue tag certifying to their inspection in accord with Arkansas statute. This tag certified the seed to have a germinative capacity of *605 88% when tested in December 1964. The defendant obtained these seed through a broker from a seed producer in Hughes, Arkansas. They remained at the defendant’s place of business not more than two days prior to delivery to the plaintiff. These seed were planted by Rizzo during the last part of April 1965. During the germination period following the planting there were four days of abnormally low temperatures. The seed did not “come up” as expected by Rizzo and he obtained what is commonly called a “half-stand” of cotton. The yield was therefore much lower than anticipated.
Rizzo thereupon brought this suit against the defendant and alleged therein not only a breach of an implied warranty as to the fitness of the seed, but also a breach of an express warranty thereto since he contends that Jordan had orally warranted the seed to germinate as certified. Jordan denied any warranties on his part as to the germinating qualities of the seed and expressly denied that he had guaranteed to Rizzo the quality of the seed, but rather that he advised the plaintiff that the seed were certified and of the variety requested. He testified further that it was not the custom of seed dealers in his area to guarantee germinating quality of seed and that it had never been his practice to do so.
The testimony reveals that various tests were made with regard to the germinative quality of the seed after Rizzo complained that they were defective. These tests, one of which was made fourteen months after the seed had been originally certified, revealed that the germinative capacity varied from a low of 62% to a high of 78%. The record also reveals that in tests of this sort there is an allowable variance of 8%.
The evidence discloses that the cotton crop of 1965 had been raised under adverse conditions. Temperatures had been abnormally low through the last part of April and the early part of May. Plaintiff’s cotton had suffered from a disease known as thrip, and seedling disease had infected young cotton generally to an extent theretofore unknown in the area. The cotton was also damaged in its maturing stages by Hurricane Betsy in September 1965.
After extensive hearing, the issue was submitted to a jury which returned a verdict for the defendant. The plaintiff appeals from the judgment thereon and assigns as error (1) the granting of certain instructions for the defendant; (2) excluding the testimony of the witness G. F. Vaughn; and (3) the verdict of the jury was against the overwhelming weight of the evidence.
The first instruction complained of is as follows:
The Court instructs the jury for the defendant Jordan Wholesale Company that there is no implied warranty of fitness or quality of articles where there has been an executed sale by one not a manufacturer.
In support of his contention that this instruction was erroneously granted the appellant cites Grafton-Stamps Drug Company v. Williams, 105 Miss. 296, 62 So. 273 (1913); Stegman v. Offerle Co-operative Grain & Supply Co., 151 Kan. 655, 100 P. 2d 635 (1940); and Henderson v. Berce, 142 Me. 242, 50 A.2d 45, 168 A.L.R. 572 (1940) to establish the fact that a sale of seed will give rise to an implied warranty on the part of the seller. The opening paragraph of Grafton-Stamps, supra, states: “A sale of seed by name raises an implied warranty that it is true to name * * (105 Miss, at 296, 62 So. at 273.) In brief, this case considers the variety of seed as distinguished from their quality as do the other cases cited by the appellant. They in no wise indicate that there is an implied warranty of fitness or quality of a product where there has been an executed sale by one not the manufacturer or producer. In fact, this instruction of the defendant appears to have been taken from the case of J. T. Fargason & Sons, Inc. v. Cullander Machinery Company, Inc., 224 Miss. 620, 80 So.2d 757 (1955), a warranty suit concerning machinery wherein we *606 stated: “ ‘Regardless of the modern trends, recognized in other jurisdictions, there is in this State no implied warranty of fitness or quality of articles where there has been an executed sale by one not a manufacturer.’ ” (224 Miss. at 631, 80 So.2d at 760.) This, by analogy, we think indicates there is no prejudicial error in this instruction though we do note it is abstract since it is not related to the evidence. Assuming, however, but not deciding, that the instruction is erroneous as contended, it was cured by a contrary and dubious instruction obtained by the plaintiff as follows:
The Court instructs the Jury for the Plaintiff, D. P. Rizzo, that the sale of seed to be sowed or planted raises an implied warranty that the seed possesses at least usual and ordinary germinative qualities. This implied warranty is as valid and binding as if it were an express warranty in writing.
The other instruction assigned as error is directed to the measure of damages in the event the jury found for the plaintiff, but since the verdict was for the defendant, it is without merit here.
An attempt was made by the plaintiff to show by the testimony of G. F. Vaughn, Chief Inspector of the Mississippi Department of Agriculture, that as the result of the subsequent tests upon the seed he advised the defendant that they should be withdrawn from the market unless the tags portrayed the germinative standard revealed by the later tests. Objection was interposed by the defendant and sustained by the court. This is the basis for the second assignment of error and in our opinion is not well taken as the same evidence was elicited from the defendant Jordan, the president of Jordan Wholesale Company, when he was asked the exact or a similar question. See Rhodes v. Roberts, 223 Miss. 580, 78 So.2d 614 (1955) and Mississippi Power & Light Company v. Jordan, 164 Miss. 174, 143 So. 483 (1932). In the latter case we stated:
Inasmuch as the appellant secured the testimony of experts competent, whose competency is admitted, before a jury, there could be no prejudice as to the exclusion of the two other physicians who were offered. (164 Miss, at 185, 143 So. at 485)
The final assignment of error is that the verdict of the jury is against the overwhelming weight of the evidence. We have considered the entirety of the record and find ample evidence to support the verdict. In fact, the evidence reflects so many factors other than defective seed that could have caused the crop loss, i. e., adverse weather, seedling disease, high winds, thrip, and boll weevils, that we are constrained to state that it is our opinion the verdict of the jury was in accord with the great weight of the evidence.
Affirmed.
ETHRIDGE, C. J., and INZER, SMITH, and ROBERTSON, JJ., concur.